

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## INFORMAL BRIEF OF APPELLANT

**Case Number:** 2022-1196

**Short Case Caption:** Golden v. US

**Name of Appellant:** Larry Golden

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the trial court's opinion, order, and/or judgment. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you ever had another case before this court? ☑ Yes ☐ No
   If yes, state the name and number of each case.

   > Case No. 2022-1229; Larry Golden v. Apple Inc. et al
   > Case No. 2022-1267; Larry Golden v. Google LLC

2. Did the trial court incorrectly decide or fail to take into account any facts?
   ☑ Yes ☐ No
   If yes, what facts?

   > The court dismissed with prejudice, my case on the "complaint" only (see the COFC Dkt. Nos. 249 & 250), and not the whole case. The case include alleged patent infringement; and, a government taking of property under the Fifth Amendment Clause of the United States Constitution. The court falsely accused me of disobeying a court order and enlarging my case. The court incorrectly adjudicated my case under 35 U.S.C. § 271(a) as a necessary predicate for government liability under 28 U.S.C. § 1498(a).

3. Did the trial court apply the wrong law? ☑ Yes ☐ No
   If yes, what law should be applied?

> The COFC overstepped its authority when the Court ordered Plaintiff-Appellant to prove his case on the provisions and guidelines of 35 U.S.C. § 271(a) as a "necessary predicate for government liability under Section 1498."
>
> "On appeal, the Federal Circuit in Zoltek III agreed that a Court of Claims action against the government was precluded. The Federal Circuit's Zoltek III decision relied on NTP Inc. v. Research in Motion Ltd., 418 F.3d 1282, 1316 (Fed. Cir. 2005), for the proposition that "direct infringement under Section 271(a) is a necessary predicate for government liability under Section 1498."
>
> In the 2012 en banc decision Zoltek V, the Federal Circuit abrogated Zoltek III, holding that establishing conduct falling within the definition of direct infringement codified in 35 U.S.C. § 271(a) is not a predicate to finding infringement under § 1498(a).

4. Did the trial court fail to consider important grounds for relief?
   ☑ Yes ☐ No
   If yes, what grounds?

> Fail to consider the sensors and detectors of the Cell-All third-party contractors (NASA, Qualcomm, Seacoast, Rhevision, and Synkera). Fail to consider the alleged infringing products camera sensors used for C/B/R detection. Fail to consider sensors and detectors that are not "native" to the manufacture of Apple and Samsung products. Fail to consider the locking mechanism of 23 of the 25 patent claims asserted in this case. Fail to consider my patented "CPU" is only identified in this case as a limitation of the asserted patent claims, not as a new invention that needs a separate claim chart.
>
> Fail to consider that after the court's decision of no "potential for patent infringement" (Zoltek, 2006), the potential for a government taking of property under the Fifth Amendment Clause of the United States Constitution has been established. The other 'mandating money' claims--under the substantive right(s)are: violation of a constitution provision (America Invents Act (IPR)); violation of procedures or statutes (motive to form a conspiracy, conspiracy and restraint of trade); and, the violations in this case, of the breach of implied-in-fact contracts by certain members of the Executive Branch and certain members of the Government agencies.

5. Are there other reasons why the trial court's decision was wrong?
   ☑ Yes ☐ No
   If yes, what reasons?

> It was based on lies. Basically, the Cell-All initiative specifications calls for biological and chemical sensors [eventual expansion to the detection of explosive and eventually radiological materials]; common cell phone devices; and communications system.
>
> Therefore, the question here, under Section 1498, is whether or not Plaintiff-Appellant has any patent claims for a chemical, biological, explosive, or radiological sensors, that are integrated into (second phase the sensors are separated from the device, (DHS, 2011)), a common device, host device, a common domestic platform, or cell phone device, to form a communication systems concept for large scale multi-sensor networks. (Plaintiff-Appellant asserted 25 patent claims that describes the integration).
>
> The only area questionable is the communication systems. The question is answered when you consider how the third-pary contractors 'tied' my patented "CPU" to their cellular modems to form "chipsets" or systems-on-a-chip (SoC).

6.  What action do you want this court to take in this case?

Never before in history, has anyone other than an African American inventor, had to prove direct infringement under Sections 271(a) and 1498(a).

I believe the reason the Government is so bent on defeating me, is because I am an African American inventor trying to get compensated for my contribution to our Nation's security. The Government is not confronted with any liability, because under FARs indemnification rule, the third-party contractors are obligated to indemnify the Government for any patent infringement liability.

I want the appellate court to decide if I have meet all of the requirements to prove patent infringement on the "preponderance of evidence" standard. I want the appellate court to decide if I have meet all of the requirements to prove a government taking of property under the Fifth Amendment Clause of the United States Constitution.

Date: 02/22/2022

Signature: _Larry Golden_

Name: Larry Golden

Pursuant to the Federal Circuit's "ORDER", in *Golden v. US*, Case No. 22-1196; Dkt. No. 11; filed 02/17/2022, Plaintiff-Appellant is submitting this corrected informal brief, not to exceed 30 pages.

This Motion is in compliance with FEDERAL RULE OF APPELLATE PROCEDURE 32: Briefs: (a)(4)(5)(6) & (7)(A) not to exceed 30 pages.

This dismissal is in favor of Defendant-Appellee, on grounds independent of the underlying merits of the action (e.g., the Plaintiff-Appellant's infringement claims; the validity of Plaintiff-Appellant' asserted patents and patent claims; and, the Defendant-Appellee's merits-based defenses).

"IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 41(b), that plaintiff's complaint is dismissed, with prejudice, for failure to comply with Patent Rule 4 and to comply with a court order." In the United States Court of Federal Claims *Larry Golden v. United States* Case 1:13-cv-00307-EGB (No. 13-307C) Document 250 Filed 11/10/21

## THE COURT OF FEDERAL CLAIMS LACK JURISDICTION TO ADJUDICATE A CASE BETWEEN PRIVATE PARTIES UNDER 35 U.S.C. § 271(a)

In *Akamai Techs. Inc. v. Limelight Networks, Inc.*, (August 13, 2015 Fed. Cir.) an en banc Federal Circuit unanimously held that direct infringement under Section 271(a) can occur: "where all steps of a claimed method are performed by or attributed to a single entity".

The Federal Circuit's en banc and unanimous decision in *Akamai Techs.,
Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015), holding direct
infringement exists "when an alleged infringer [Defendant the United States]
conditions participation in an activity or receipt of a benefit upon performance of a
step or steps of a patented method and establishes the manner or timing of that
performance."

This holding may render it more difficult for the Trial Court to demand or
order a divided infringement analysis of Apple, Samsung, and LG under Section
1498; where Apple, Samsung, or LG performs one or more steps of a claimed
method (e.g., biometric fingerprint identification; biometric fingerprint lock
disabler; near-field communication (NFC)), and the other DHS S&T *Cell-All* third-
party contractor's—NASA, Seacoast, Qualcomm, and Rhevision—technology
performs other steps (e.g., analyzes data collected from CBRNE sensors/detectors).

According to the Defendant-Appellee, Plaintiff-Appellant "did not satisfy
locating sensors/detectors inside the accused products … included sensors/
detectors [the sensors and detectors of NASA, Seacoast, Qualcomm, and
Rhevision] that were not "native" to the products being manufactured by Apple
and Samsung."

Under Section 1498(a), the Trial Court must include the sensors/detectors of
NASA, Seacoast, Qualcomm, and Rhevision. The Court failed to do so.

The COFC overstepped its authority when the Court ordered Plaintiff-Appellant to prove his case on the provisions and guidelines of 35 U.S.C. § 271(a) as a "necessary predicate for government liability under Section 1498."

> "On appeal, the Federal Circuit in *Zoltek III* agreed that a Court of Claims action against the government was precluded. The Federal Circuit's Zoltek III decision relied on *NTP Inc. v. Research in Motion Ltd.*, 418 F.3d 1282, 1316 (Fed. Cir. 2005), for the proposition that "direct infringement under Section 271(a) is a necessary predicate for government liability under Section 1498."

In the 2012 *en banc* decision *Zoltek V*, the Federal Circuit abrogated *Zoltek III*, holding that establishing conduct falling within the definition of direct infringement codified in 35 U.S.C. § 271(a) is not a predicate to finding infringement under § 1498(a).

> 35 U.S.C. 271 INFRINGEMENT OF PATENT. (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Instead, the court concluded that the scope of § 1498(a) is "linked to the scope of the patent holder's rights as granted by the patent grant in title 35 U.S.C.

section 154(a)(1)." In contrast to the statutory definitions of infringement in 35 U.S.C. § 271; 35 U.S.C. § 154(a)(1) defines the patent grant issued by USPTO as:

> "[t]he right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States, and, *if the invention is a process*, . . . the right to exclude others from using, offering for sale or selling throughout the United States, products made by that process, *referring to the specification for the particulars thereof*." 35 U.S. Code § 154(a)(1).

Notably, when a suit arising under 28 U.S.C. § 1498 is adjudicated under 35 U.S.C. § 271, the judgement should be reversed in favor of a suit against the United States. *See Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*, 369 F.Supp.3d 963 (2019) (granting motion for summary judgement because of defendant's immunity under § 1498); see also *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1382 (Fed. Cir. 2002).

## PLAINTIFF-APPELLANT'S "CORRECTED PRELIMINARY INFRINGEMENT CONTENTIONS CLAIM CHARTS"

The United States argued Plaintiff-Appellant did not satisfy locating sensors/detectors inside the accused products; enhanced the case by including the CPU and the NODE+; included sensors/ detectors that were not 'native' to the products manufactured by Apple & Samsung.

The lower court never included the sensors/detectors of NASA, Seacoast, Qualcomm, and Rhevision; nor did the lower court address or respond to the accused devices smartphone cameras used as C/B/R detectors in response to the DHS S&T *Cell-All* initiative.

Plaintiff-Appellant included in the "Corrected Preliminary Infringement Contentions claim charts of Apple, Samsung, & LG [each averaging 260 pages], 28 alleged infringing devices of Apple, Samsung, & LG; and, twenty-five independent claims of 5 asserted patents.

Plaintiff-Appellant was going to add the "Corrected Preliminary Infringement Contentions Claim Charts" of Apple (Dkt. No. 243), & Samsung (Dkt. No. 244) as an Appendix, but because the documents were stricken, Plaintiff-Appellant cannot retrieve the official documents. When Plaintiff-Appellant attempts to open the file; a window appears that states, "You do not have permission to view this document".

Before an appellate court can consider an appeal, a record of the proceedings in the Trial Court generally must be filed with the Appellate Court. In federal appellate practice, the record on appeal consists of the <u>original exhibits and papers filed in the Trial Court, all transcripts of proceedings, and a certified copy of the Trial Court Clerk's docket entries</u>, *See Fed. R. App. P. 10(a) (West Group 2000)*.

The documents constituting the record must be numbered and forwarded to the Circuit Clerk by the Trial Clerk along "with a list of the documents correspondingly numbered and reasonably identified", *See Fed. R. App. P. 11(b)(2) (West Group 2000)*.

Plaintiff-Appellant believes that without the original numbered "Corrected Preliminary Infringement Contentions Claim Charts", the Appellate Court is left to deciding who is telling the truth when it's Plaintiff-Appellant's word against the Defendant United States and the Trial Court Judge.

The Defendant and Trial Court made several false statements (discussed later in this document) that can only be proven if the Appellate Court has the original numbered "Corrected Preliminary Infringement Contentions Claim Charts". Defendant-Appellee's argument that Plaintiff-Appellant has the documents in his possession, does not meet the requirement for *Fed. R. App. P. 10(a) and Fed. R. App. P. 11(b)(2)*.

It seems prejudicial to dismiss a case [complaint] with prejudice, for "failure to comply with Patent Rule 4 (i.e., a chart identifying where each element of each asserted claim is found within each accused product, process, or method, including the name and model number, if known), when the Defendant United States refuse to produce the original numbered "Corrected Preliminary Infringement Contentions Claim Charts", and the Trial Court Judge refuse to make the original

numbered "Corrected Preliminary Infringement Contentions Claim Charts" available to the Appellate Court.

The "Corrected Preliminary Infringement Contentions Claim Charts" answers the arguments of the United States: "did not satisfy locating sensors/detectors inside the accused products; enhanced the case by including the CPU and the NODE+; included sensors/detectors that were not "native" to the products being manufactured by Apple and Samsung." It also provided details covering the lower court's decision not to include the sensors/detectors of NASA, Seacoast, Qualcomm, and Rhevision; nor, did the lower court address or respond to the accused devices smartphone cameras used as C/B/R detectors in response to the DHS S&T *Cell-All* initiative.

For this reason, Plaintiff-Appellant, an African American [Black] Inventor, believes he has fallen victim to a long-standing tradition of the Government: "deprive and steal the ideas of African Americans, and never allow African American inventors to receive any financial gains when the Government is the Defendant".

### PLAINTIFF-APPELLANT'S ANSWERS TO THE TRIAL COURT'S *"OPINION"*

Quotes taken from the "OPINION" in *Larry Golden v. The United States*: Case 1:13-cv-00307-EGB Document 249 Filed 11/10/21 and Plaintiff-Appellant's answers to "why" it is essential the Defendant produce the original documents.

*OPINION:* "Defendant is correct that the corrected contentions and claim charts are well short of the requirement of Patent Rule 4(c) in that they do not identify any sensing or detecting component. We will use the Apple claim chart as illustrative of the problem."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies numerous sensing and detecting components. "During the development of second-generation prototypes, chemical sensors were separated from the phones, allowing for initial market deployment of the sensors through third-party products, such as sleeves, that could be added to existing phones (U.S. Department of Homeland Security, 2011a)"

The Plaintiff-Appellant was directed by the Court to show direct infringement of Apple, Samsung, and LG products only. Under Section 1498(a), the Trial Court must include the sensors/detectors of NASA, Seacoast, Qualcomm, and Rhevision. The Court failed to do so. The Trial Court instead, instructed Plaintiff-Appellant to show direct infringement under Section 271(a) as a necessary predicate to infringement under Section 1498(a), *Zoltek III.*

DHS Cell-All sensors & detectors are:



**DHS Cell-All Chemical Sensors**: NASA's silicon-based sensing chip, consists of 64 nanosensors and is less than one square centimeter, can turn a cell phone into a portable poison detector.



**DHS Cell-All Chemical Sensor**: Qualcomm Inc. first introduced a "built-in, embedded" chemical sensor for the smartphone. Qualcomm was also contracted as a cell phone manufacturer.



**DHS Cell-All Chemical Interchangeable Sensors**: Building on the system he developed with NASA for the Cell-All project, Subcontractor George Yu of Genel Systems created the NODE+ CBR platform



**DHS Cell-All Chemical Sensors**: IDT, formally Synkera Technologies Inc. developed a stand-alone sensing card for integration with a cell phone, smartphone, etc.



**DHS Cell-All Chemical Sensor**: Seacoast Science chemical sensors can distinguish between several gases. Seacoast's chemical sensors integrated with a cell phone, smartphone, etc.



**DHS Cell-All Chemical Camera Sensor:** A megapixel camera captures the image from the array of nanopores in chip. The camera lens, developed by *Rhevision*, uses fluid rather than bulky moving parts.

*OPINION:* "The citation to the NODE+ sensors of General Systems Inc. does not meet plaintiff's burden to "identify[] where each element of each asserted claim is found within each accused product."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies the NODE+ manufacturer as a NASA sub-contractor. Section 1498 states: "For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a **subcontractor**, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." [Building on the system Yu developed with NASA for the DHS Cell-All project, George Yu [as a NASA subcontractor] ..., created the NODE+ platform] [In Plaintiff-Appellant's "Amended Complaint for Reduced Pleadings", DKT 195 CFC 13-307C *Larry Golden v. The United States*, NASA's NODE+ can be found on pgs. 81, 82, & 83, and second generations prototypes on pg. 51]. *The Trial Court approved the NODE+ device in its adoption of the last amended complaint, and in the Court's, Opinion dated November 30, 2016.*

*OPINION:* "Defendant argues that Mr. Golden's corrected contentions are deficient because they again fail to specifically identify the hazardous material sensors in any of the accused products … Defendant also argues that the late

included CPUs and chipsets are an improper expansion of the case and, in any event, have no corresponding claim chart to identify where in those devices the patent is infringed. We agree on each point and begin with the latter. Patent Rule 4(c): "a chart identifying where each element of each asserted claim is found within each accused product, process, or method, including the name and model number ..."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies Defendants' camera sensors for C/B/R sensing and detecting. Plaintiff-Appellant identified the camera sensors for C/B/R detection in all of Defendants alleged infringing smartphones:

DHS *"CELL-ALL"* REPORT: Michael Sailor, whose research team at the University of California, San Diego works for ***Rhevision Technology, Inc.***— third-party DHS Cell-All contractor. Tiny lenses affixed to a cell phone's camera can be used to monitor color changes. If the lenses spot a color that is related to poison, they will trigger an alert system on the cell phone. Sailor's team is a sub-contractor to ***Rhevision***, a startup in San Diego that invented the miniature tunable camera lens, which makes the lenses. So far, the chips have successfully detected sarin gas, methyl salicylate – a compound used to simulate mustard gas – and toluene, a gasoline additive, among others.

Demonstration: "Taking part will be representatives of the DHS Science & Technology Homeland Security Advanced Research Projects Agency (HSARPA); NASA Ames Research Center; and Qualcomm Inc., **Rhevision Technology Inc.**, and Seacoast Science. The location is the SDSU Chemical Sciences Laboratory Building, Room 122, at the corner of College Avenue and Canyon Crest Drive in San Diego." *Cell-All Could Put Chemical Sensors Everywhere. Retrieved from: https://ohsonline.com/articles/2009/10/26/cell-all-could-put-chemical-sensors-everywhere.aspx?admgarea=magazine*

Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies 13 of the 25 asserted patent claims comprises the "CPU" as an *element* of the CMDC devices (claim 1 of the '497 patent; claim 10 of the '752 patent; claims 1, 2, & 3 of the '189 patent; claims 13, 14, 15, 22, & 23 of the '439 patent; claims 4, 5, & 6 of the '287 patent)

Claims 4, 5, & 6, of the '287 patent has a combined total of forty-two (42) limitations. Three (3) [*the claims preamble*] of the (42) limitations, describes the alleged infringing device that includes the "name and model number" [*local patent rule 4c*] of the central processing units (CPUs) and chipsets. Thirty-six (36) of the (42) limitations identify the central processing unit (CPU) as the element found within each accused product [*local patent rule 4c*]. Within the (36) claim limitations, Plaintiff-Appellant identify the element as the central processing unit.

In the "Amended Complaint for Reduced Pleadings", DKT 195 CFC 13-307C *Larry Golden v. The United States*, Plaintiff-Appellant described the functional and operational specifications, requirements and conditions at: CPU: pgs. 3, 4, 100, 109, 118, & 127; CPU for CMDC device (diagrams): pgs. 140, 141, 142, 143, 144, 145, 147, 148, 149, 150, 151, 152, 154, 155, 156, 157, 158, & 159; CPU for detection device (diagrams): pgs. 142, 143, 149, 150, 156, & 157; and, CPU for smartwatch device (diagrams): pgs. 144, 145, 151, 152, 158, & 159. The CPU was not introduced as a new device.

*OPINION:* "His patents, however, claim a specific type of field device, i.e., hazardous material sensors, as an independent component of his invention. Thus, under Patent Rule 4, he must identify where in the Apple and Samsung devices such a sensor is present. Instead, plaintiff asserts that the phone's brain, its CPU, ought to count as the sensor."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts does not list or claim the CPU as a sensor. The charts do list several DHS S&T authorized sensing devices designed to be integrated with at least that of a cell phone or smartphone. The integration creates the *Cell-All Ubiquitous Biological & Chemical Sensing Device*; DHS S&T (BAA-07-10)

*OPINION:* "Plaintiff's preliminary infringement contentions fail to identify a sensor or detector in the accused products as claimed by his patents."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts list 25 independent patent claims. It is the claims that describes the invention(s). *In the Defendant's (United States) "Preliminary Disclosure of Invalidity Contentions", the Defendant identifies a "sensor or detector ... as claimed by referenced patents", because the Defendant was trying to prove 102-anticipation.*

*OPINION:* "As discussed below, however, his claim charts do not identify any biometric fingerprint sensors or functions in the accused devices as the claimed locking features."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies a biometric fingerprint sensor in the alleged infringing products, and describe how after multiple failed attempts to unlock the device, the device locks, or the lock is disabled.

*OPINION*: "It is unclear how that last point is responsive to defendant's argument, which has nothing to do with the lack of specificity in the patent itself, but rather asserts that Mr. Golden's claim charts are deficient because they do not identify the locking mechanisms in the accused devices."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies the locking mechanisms in the accused

devices, and describes what in the accused devices causes a signal to be sent to lock or unlock a product remote from the accused device.

*OPINION:* "This is again short of what is required by the rules. As we stated before, claiming that a product merely is capable of operating in a manner that infringes is insufficient notice in an infringement contention … That a device could do something is not sufficient to identify what component performs the necessary function … The limitations claimed in the patents for a locking function claim a capability to lock the device itself or some of its subsystems, such as the sensors, not a device external to the CMDC. Plaintiff's corrected contentions fail to identify where in the accused devices a locking mechanism is present."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts list 25 independent patent claims. It is the claims that describes the invention(s). To satisfy the Court's order of proving direct infringement under 271(a) as a necessary predicate to infringement under Section 1498(a), Plaintiff-Appellant identified where in each of the alleged infringing devices, as a single entity, the locking mechanism can be found.

The scope of § 1498(a) is "linked to the scope of the Patent grant in title 35 U.S.C. Section 154(a)(1) to describe "the specification for the particulars thereof." The *Cell-All* specifications are:

- biological and chemical sensors could be effectively integrated into common cell phone devices
- a sensor network with more than 240M sensors
- miniaturized biological and chemical sensing (e.g., laboratories on a chip) with integration into common device(s)
- a communication systems concept for large scale multi-sensor networks
- capable of detecting hazardous biological and/or chemical materials
- eventual expansion to the detection of explosive and eventually radiological materials (in future collaborations with other organizations)
- demonstration of a proof-of-concept sensor, device and communications system for Cell-All
- [i]ntegrated into a common domestic platform, such as a cell phone
- [p]rovides adequate sample collection methods within the host device
- [p]rovides sensing capability for multiple samples and any required methodology

Basically, the *Cell-All* initiative specifications calls for biological and chemical sensors [eventual expansion to the detection of explosive and eventually radiological materials]; common cell phone devices; and communications system.

Therefore, the question here, under Section 1498, is whether or not Plaintiff-Appellant has any patent claims for a chemical, biological, explosive, or radiological sensors, that are integrated into [second phase the sensors are separated from the device], a common device, host device, a common domestic

platform, or cell phone device, to form a communication systems concept for large scale multi-sensor networks.

It is impossible for the Trial Court to say the C/B/R/E detectors of the *Cell-All* initiative do not have a means of sending a single to the host device (CMDC device or Defendant's smartphones) to lock, unlock, or disable the detectors or host devices, when the Defendant United States and the Trial Court fail to include, and allow discovery for, at least the detectors of the DHS *Cell-All* third-party contractors (i.e., Synkera, Seacoast, NASA, Qualcomm, and Rhevision).

*OPINION:* "The '497 and '752 patents claim a mechanism for locking the CMDC in response to the detection of hazardous materials, found in claim 1 and claim 10 of those patents respectively. As we stated before, plaintiff's contentions must identify where or how in the accused devices this limitation is found. Plaintiff has again failed to do so."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies two DHS S&T initiatives; the mLOCK initiative; the MATTS initiative; and, the TRUST initiative. The mLOCK receives and sends signals to and from the CMDC device [alleged infringing smartphones]. The MATTS served as a gateway device that receives a signal from the TRUST detection device when hazardous materials are detected, and transmit that signal to the mobile device. A signal is then sent from the mobile device to lock the

container. All of the procedures described was gathered from publicly available information. More will be revealed once discovery is made. The claim charts will show that the other 23 independent claims do not have this limitation.

*OPINION:* "For Samsung products (and the LG products) a similar carbon monoxide warning feature is highlighted, but this time the sensor is in an external detector which communicates with the Samsung device via a downloaded application to provide a warning to the user. Both examples are a clear misfire as they do not purport to be a locking feature in response to a detected hazard, and, in the case of the Samsung (and LG) devices, both require communication with another, un-accused device. These are clear failures to identify where in the accused devices the locking feature in response to a detected hazard is present."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts will show "a locking feature in response to a detected hazard" in only two claims; claim 1 of the '497 patent and claim 10 of the '752 patent. Most of the remaining 23 independent patent claims features a mechanism that locks the devices after multiple failed attempts.

*OPINION:* "At best, this contention can be read to argue that the CPUs make the accused smart devices capable of locking. That is insufficient because the capability of a device to be programmed to perform similarly does not identify where or what in the device meets the patent's limitation."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts describes Plaintiff -Appellant's CPU, and the CPUs for Apple, Samsung, & LG accused devices, 117 times in the following way: "The CPU, which controls all Programmable Logic Controllers (PLCs) consists of two basic sections: the central processing unit (CPU) and the input/output interface system. The input/output system is physically connected to field devices (e.g., sensors, etc.) and provides the interface between the CPU and the information providers (inputs) and controllable devices (outputs). To operate, the CPU "reads" input data from connected field devices through the use of its input interfaces, and then "executes", or performs the control program that has been stored in its memory system. The CPU processes instructions in order to carry out certain functions that make the device operate properly. The CPUs are often described as the brain of computers, smartphones and tablets because of the central role they play in the functioning of the devices." The accused [products] can be locked by the CPU or the operating system, but the operating system is also controlled by the CPU."

*OPINION:* "Plaintiff's patent clearly claims an independent component part of the CMDC that is a locking mechanism. Such a component is wholly missing from the claim chart. Plaintiff has had two attempts at identifying this feature in the accused devices. Having failed to do so, we assume that he cannot."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts describes a lock integrated with the accused devices, but remote from the accused devices in claim 1 of the '497 patent and claim 10 of the '752 patent. Most of the remaining 23 independent patent claims features a mechanism that locks the devices after multiple failed attempts.

*OPINION:* "Plaintiff's earlier, defective infringement contentions accused 28 specific devices, 10 manufactured by Apple, nine by Samsung, and nine by LG. The documents submitted by plaintiff on August 19, 2021, again identify 10 Apple products and nine from Samsung. Voluminous claim charts for these products are included."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts also includes nine accused devices by LG. When Plaintiff-Appellant followed up on the LG claim charts, the Clerk's office repeatedly said they were in chambers being reviewed. The trial court, and defense attorney, both admit to having the documents, but the trial court never entered the infringement contentions on the docket.

*OPINION:* "The document received on August 23, 2021, however, states that 30 devices from Apple, 27 from Samsung, and 27 from LG are at issue. In addition to the allegations against LG, these contentions add smart watches and chipsets and CPUs used by Apple in a host of products it has offered and currently

offers. The same is true for Samsung. Chipsets and CPUs used in LG products are also included. Patent Rule 4(c): "a chart identifying where each element of each asserted claim is found within each accused product, process, or method, including the name and model number, if known"

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts will reveal that's not true. According to Patent Rule 4(c): "a chart identifying where each element of each asserted claim is found within each accused product…", Plaintiff-Appellant is responsible for identifying where the CPU is found in each of the accused devices. When the Plaintiff-Appellant did what was require, the Defendant (United States) accused the Plaintiff-Appellant of enlarging the case and introducing the CPU as a separate invention. Not true.

*OPINION:* "Plaintiff did not attach a claim chart that separately identifies how these additional devices are alleged to infringe nor any claim chart for any products used or offered by LG."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts also includes nine accused devices by LG. When Plaintiff-Appellant followed up on the LG claim charts, the Clerk's office repeatedly said they were in chambers being reviewed. The trial court, and defense

attorney, both admit to having the documents, but the trial court never entered the infringement contentions on the docket.

OPINION: "The latter, specific contentions regarding LG, along with a claim chart, were received by the clerk's office on September 21, 2021, along with a "Notice of Missing Documents" in which plaintiff states that the docket is missing his contentions regarding LG. He points out that the appendix to defendant's motion to strike contains the contentions aimed at LG. The notice does not explain how or why those documents are missing nor does it seek leave to file them out of time. The notice and attached contentions are thus directed to be returned to plaintiff unfiled."

ANSWER: Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts also includes nine accused devices by LG. When Plaintiff-Appellant followed up on the LG claim charts, the Clerk's office repeatedly said they were in chambers being reviewed. The trial court, and defense attorney, both admit to having the documents, but the trial court never entered the infringement contentions on the docket.

OPINION: "We note, however, that the LG contentions were served on defendant and treated in the government's motion. Although we decline to add them to record *sua sponte*, the holdings below would apply to these contentions as well. Thus, even if we considered them, the outcome would not change."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts for LG was submitted in good faith and the trial court responded to what the trial court assumed were in the LG contentions. Assuming and not actually reviewing the LG charts, does not qualify the trial court to write an opinion based on the merits of the LG charts, and dismissing the same, with prejudice.

*OPINION:* "Plaintiff's August 23 submission improperly attempts to expand the scope of the case to include a host of new devices, most which appear to be only components in other products. This appears in tune with plaintiff's argument that a CPU is the infringing component because it can be programmed to perform the functions or direct other components to perform the functions claimed by his patents. Putting the propriety of that aside for the moment, the inclusion of these new chips as independent infringing devices is an improper attempt to again enlarge and materially change the infringement pled in the final amended complaint."

*ANSWER:* Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts identifies the CPU as an element in the accused products and Plaintiff-Appellant's CMDC devices (i.e., cell phones, smartphones, and smartwatches). The smartwatch was not identified as a separate invention. The

smartwatch is identified as a C/B/R detection device, integrated and connected to the accused devices, but remote from the accused devices.

*OPINION:* "He also discusses documents from Qualcomm, a mobile phone chip producer, apparently submitted to DHS in response to the *Cell-All* solicitation … In the column for the accused devices, plaintiff writes that the government and Apple infringe this detecting component under the doctrine of equivalents through the "NODE+" platform "developed with NASA for the DHS *Cell-All* project." … It is apparent that the NODE+ and the "off-the-shelf sensor" are both separate from and extraneous to the accused devices … This is clarified further in plaintiff's reply brief where he explains that he has tried to demonstrate to defendant that "when the sensing and detection means is placed in, on, upon, or adjacent the cell phone, the integration forms a 'sensor'." … included in his claim charts is generalized background regarding the *Cell-All* initiative, other unaccused devices … In a couple of other instances, plaintiff's charts refer to two prototype cell phones produced in 2011 for DHS, but neither of these phones is an accused product, nor were they made by Apple, Samsung, or LG."

*ANSWER:* This case is about Title 28 U.S.C. § 1498(a), (government infringement of a valid patent), as it is '[L]inked to the Scope of the Patent Grant in Title 35 U.S.C. Section 154(a)(1)'. But, as noted in the lower court's Opinion, this case was adjudicated under *Zoltek III* where Title 35 U.S.C. § 271(a), (direct

infringement by a private entity), is a "Necessary Predicate for Government Liability Under Section 1498". Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts illustrates how Plaintiff-Appellant has satisfied the requirements for direct infringement or infringement under the "doctrine of equivalents" for both Section 1498(a) and Section 271(a). *The requirements for the Cell-All initiative were thoroughly covered at a DHS S&T demonstration in 2011. Plaintiff's DVD of the demonstration*:

**Relief**

Plaintiff-Appellant's "Corrected Preliminary Infringement Contentions Claim Charts includes material from the *Inter Partes Review* because the Defendant, who was not a 'person' authorized to petition for *inter partes review* at

the PTAB, introduced the same non-qualified references of Astrin, Breed, and Mostov in *Defendant's (United States), 610-page "Preliminary Disclosure of Invalidity Contentions"* in this case. The trial court never decided if there's a "taking" of property under the Fifth Amendment Clause of the United States Constitution, without compensation, when the Government (United States), who was not a 'person' authorized to petition for *inter partes review* at the PTAB; who also used unqualified references; cause the taking of Plaintiff-Appellant's property without compensation. This created a substantive right enforceable against the United States for money damages." *United States v. Testan*, (1976).

Plaintiff-Appellant's case is now "ripe" for a 'taking' claim, because the *potential liability* under Section 1498(a) was eliminated when the Trial Court changed the cause of action to proving direct infringement under 35 U.S.C. § 271(a), and dismissed Plaintiff-Appellant's case under the provisions of 35 U.S.C. § 271(a). This created a substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Judge Margaret Sweeney; Court of Federal Claims: *XP VEHICLES, INC. and LIMNIA, INC. V. The United States*; Case No. 12-774C; "The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Instead, the substantive right

must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc)."

Plaintiff-Appellant was ordered to prove direct infringement under Section 271(a) as a necessary predicate for infringement under Section 1498(a). Zoltek III. Never before in history, has anyone other than an African American inventor, had to prove direct infringement under Sections 271(a) and 1498(a).

I believe the reason the Government is so bent on defeating me, is because I am an African American inventor trying to get compensated for my contribution to our Nation's security. The Government is not confronted with any liability, because under FARs indemnification rule, the third-party contractors are obligated to indemnify the Government for any patent infringement liability.

Respectfully submitted,

Larry Golden, Plaintiff, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22th day of February, 2022, a true and correct copy of the foregoing "Corrected Informal Brief", was served upon the following Defendant by priority "express" mail:

Grant D. Johnson

Trial Attorney

Commercial Litigation Branch

Civil Division

Department of Justice

Washington, DC 20530

Grant.D.Johnson@usdoj.gov

202-305-2513

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

# In the United States Court of Federal Claims

**No. 13-307 C**
**Filed: November 10, 2021**

LARRY GOLDEN

v.                                                            **JUDGMENT**

UNITED STATES

Pursuant to the court's Opinion, filed November 10, 2021, granting defendant's motion to dismiss and denying plaintiff's cross-motion for summary judgment,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 41(b), that plaintiff's complaint is dismissed, with prejudice, for failure to comply with Patent Rule 4 and to comply with a court order.

.

Lisa L. Reyes
Clerk of Court

By:   *Debra L. Samler*

Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>. Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 13-307C
(Filed: November 10, 2021)

* * * * * * * * * * * * * * * * * * * *

LARRY GOLDEN,

                 *Plaintiff*,

v.

THE UNITED STATES,

                 *Defendant*.

Patent infringement; 28 U.S.C. § 1498(a); RCFC Patent Rule 4; Preliminary infringement contentions; Dismissal.

* * * * * * * * * * * * * * * * * * * *

*Larry Golden*, pro se.

*Grant D. Johnson*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, with whom were *Brian M. Boynton*, Acting Assistant Attorney General, and *Gary L. Hausken*, Director.

## OPINION

Plaintiff, Larry Golden, owns a family of patents concerning a device for detecting chemical, radiological, and biological hazards. He alleges generally that the United States, through the Department of Homeland Security, has caused cell phone manufacturers to produce devices that infringe on one or more of his patents. Eight years on, however, the case has not proceeded past the pleadings stage; the most recent pleading being the sixth amended complaint. After allowing leave to file that complaint, we warned plaintiff that it would be his last, and we set a schedule to proceed to claim construction. The first step was to have been the filing of preliminary infringement contentions. Plaintiff's contentions, however, were "woefully deficient" and were struck by our order of July 29, 2021. *Golden v. United States*, 2021 WL 3238860, at *7 (Fed. Cl. July 29, 2021). We declined, however, to grant defendant's request that we dismiss the case and thus directed plaintiff to make another attempt at preliminary contentions. We cautioned, however, that it would be his final chance. *Id.*

Plaintiff timely submitted two batches of documents on August 19 and 23, 2021.  Those were docketed, after an order clarifying their status for the clerk's office, on September 20, 2021.   Defendant has since again moved to strike the contentions and to dismiss the complaint.  Because we agree that the infringement contentions fail to meet the requirements of local patent rule 4 and improperly attempt to enlarge the scope of this case, we grant the motion to strike and to dismiss.

## BACKGROUND

The Sixth Amended Complaint (ECF No. 195) puts forth a general theory that the Department of Homeland Security ("DHS") solicited proposals for the development of devices, such as plaintiff's, through its "Cell-All" initiative in 2007 and the following years.   The focus of this program was cell phones.  Plaintiff avers that he responded to the solicitation along with cell phone manufacturers such as Apple and Samsung.  Mr. Golden alleges that DHS continues to fund development of these devices to this day.  Through these efforts, according to plaintiff, the government has caused other manufacturers to develop, produce, and commercialize devices, such as cell phones, that infringe on plaintiff's patents.

Plaintiff describes his invention as a Communication, Monitoring, Detecting, and Controlling Device, known as a "CMDC."  Sixth Am. Compl. ¶ 6. Each word corresponds to a feature of his invention.  "Communication," such as cellular or WiFi; "monitoring," such as a screen for viewing alerts from the device; "detecting" via a "chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor"; and "communication" is found in the fact that the communication device is part of a system that can communicate with other devices.  *Id.*  Also central to his invention is the presence of a central processing unit ("CPU") for making these constituent elements function together, or as he describes it in the complaint, an "engine of logic, as with the brain."  *Id.*  The CMDC device also features a locking, unlocking and disabling function via sent or received signals.  This device is claimed by the five patents still at issue: the '497, '752, '189, '439 and '287 patents.[1]

Plaintiff's earlier, defective infringement contentions accused 28

---

[1] These refer to U.S. Patent Numbers 7,385,497; 8,106,752; 9,096,189; 9,589,439; and 10,163,287.

specific devices, 10 manufactured by Apple, nine by Samsung, and nine by LG. The documents submitted by plaintiff on August 19, 2021, again identify 10 Apple products and nine from Samsung. Voluminous claim charts for these products are included. The document received on August 23, 2021, however, states that 30 devices from Apple, 27 from Samsung, and 27 from LG are at issue. In addition to the allegations against LG, these contentions add smart watches and chipsets and CPUs used by Apple in a host of products it has offered and currently offers. The same is true for Samsung. Chipsets and CPUs used in LG products are also included. Plaintiff did not attach a claim chart that separately identifies how these additional devices are alleged to infringe nor any claim chart for any products used or offered by LG. The latter, specific contentions regarding LG, along with a claim chart, were received by the clerk's office on September 21, 2021, along with a "Notice of Missing Documents" in which plaintiff states that the docket is missing his contentions regarding LG. He points out that the appendix to defendant's motion to strike contains the contentions aimed at LG. The notice does not explain how or why those documents are missing nor does it seek leave to file them out of time. The notice and attached contentions are thus directed to be returned to plaintiff unfiled.[2]

Earlier this year, we struck plaintiff's first attempt at preliminary infringement contentions for two principal reasons. The first was that plaintiff's submittals, including lengthy charts, did not identify a specific component in the accused devices that was alleged to be a sensor. *Golden*, 2021 WL 3238860 at *4-6. It was insufficient that plaintiff's contentions alleged the general ability of the devices to be modified to operate as plaintiff's device does. *Id.* at 6.

The second basis for rejecting plaintiff's earlier attempt at infringement contentions was that they did not identify a locking feature as claimed by plaintiff's patents. *Id.* at 6-7. Plaintiff's citation to the doctrine of equivalents was unavailing because the charts offered did not assert with any detail how the accused devices performed substantially the same functions in substantially the same way. *Id.* at 7. Defendant again raises these issues regarding plaintiff's revised preliminary contentions. As explained

---

[2] We note, however, that the LG contentions were served on defendant and treated in the government's motion. Although we decline to add them to record *sua sponte*, the holdings below would apply to these contentions as well. Thus, even if we considered them, the outcome would not change.

below, plaintiff's corrected contentions fail for these same reasons.

Plaintiff responded to defendant's motion to strike and asked the court to grant summary judgment in his favor because of an alleged abuse of process on defendant's part for having repeated its same procedural arguments. Those motions are fully briefed.[3] Oral argument is unnecessary.

## DISCUSSION

The overarching issue, once again, is whether plaintiff's infringement contentions comply with the court's patent rules, specifically Patent Rule 4, which lists what must be present in preliminary infringement contentions. In pertinent part:

> (a) the claim in each product, process, or method of each patent at issue that is allegedly infringed by each opposing party;

> (b) for each asserted claim, each product, process, or method that allegedly infringes the identified claim. This identification must include the name and model number, if known, of the accused product, process, or method;

> (c) a chart identifying where each element of each asserted claim is found within each accused product, process, or method, including the name and model number, if known;

> (d) whether each element of each identified claim is alleged to be literally present or present under the doctrine of equivalents in the accused product, process, or method; and

---

[3] After the conclusion of briefing on the parties' motions, defendant filed a notice regarding the outcome of related proceedings that Mr. Golden brought in district court against the cell phone manufacturers. The complaint was dismissed as frivolous. *Golden v. Apple Inc.*, No. 6:20-cv-04353 (D. S.C. Nov. 3, 2021) (slip op. dismissing case). Mr. Golden attempted to lodge his objections regarding that decision in documents received by our clerk's office on November 4 and 8, 2021. Those documents were not docketed by the clerk's office because there is no provision in the court's rules allowing them to be filed. Accordingly, we direct the clerk's office to return them to plaintiff unfiled.

Rules of the United States Court of Federal Claims ("RCFC"), Appendix J, Patent Rule 4(a)-(d).

Preliminary infringement contentions serve, and must be specific enough, to put the opposing party and the court on notice of plaintiff's position as to "where each element of each infringed claim is found within the accused device." *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 12, 16 (2008) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1362-63 (Fed. Cir. 2006)). In a patent case, a specialized and technical area of law, the preliminary contentions supplement the notice pleading required of the complaint to focus the issues for discovery and trial. *Iris Corp. Berhad. v. United States*, 2019 WL 2317143, at *2 (Fed. Cl. May 8, 2019).

Defendant argues that Mr. Golden's corrected contentions are deficient because they again fail to specifically identify the hazardous material sensors in any of the accused products and again do not identify in any of the accused devices how the unlocking function is performed in response to the detection of a hazard. Defendant also argues that the late-included CPUs and chipsets are an improper expansion of the case and, in any event, have no corresponding claim chart to identify where in those devices the patent is infringed. We agree on each point and begin with the latter.

## I. CPUs And Chipsets

Plaintiff's August 23 submission improperly attempts to expand the scope of the case to include a host of new devices, most which appear to be only components in other products. This appears in tune with plaintiff's argument that a CPU is the infringing component because it can be programmed to perform the functions or direct other components to perform the functions claimed by his patents. Putting the propriety of that aside for the moment, the inclusion of these new chips as independent infringing devices is an improper attempt to again enlarge and materially change the infringement pled in the final amended complaint. We warned that the pleading stage had come to an end. *See* Order of February 21, 2021 at 7 (ECF No. 215) ("Plaintiff may file no further amended complaints."). In any event, these contentions are not supported by a claim chart and thus violate RCFC Patent Rule 4(c). Accordingly, plaintiff's August 23 submission is struck for failure to conform to the court's rules and failure to follow a court order.

## II. Sensors

Defendant argues that plaintiff's corrected preliminary infringement contentions, like the first attempt, do not identify any sensing or detecting component in the accused devices. Instead, plaintiff's contentions merely point to the CPU, recite information from the patents' specifications regarding potential embodiments of his invention, or contain other irrelevant information.[4]

Plaintiff's response argues generally that preliminary infringement contentions need not provide every piece of evidence to support plaintiff's case since they are produced prior to discovery; a rule of reasonableness must be applied. Plaintiff then provides examples from his LG contentions to show how has met the specificity required of preliminary contentions. Plaintiff merely quotes *in haec verba* from his LG contentions for the sensing component of the first claim of the '497 patent. He then quotes from the specifications of all five patents regarding the use of the CPU in his invention. Although not explicitly argued, we understand this to be an argument that the ability of the CPU in the accused devices to instruct the phones to perform functions, such as running a sensor, is sufficient to infringe on his device, given the central importance of the CPU to both his CMDC and the accused phones by LG, Apple, and Samsung. He also discusses documents from Qualcomm, a mobile phone chip producer, apparently submitted to DHS in response to the Cell-All solicitation. Lastly, plaintiff reiterates that Claim 1 of the '497 patent is infringed by the accused products' CPUs, chipsets, and biometric locking disablers (fingerprint reading).[5]

Defendant is correct that the corrected contentions and claim charts are well short of the requirement of Patent Rule 4(c) in that they do not identify any sensing or detecting component. We will use the Apple claim chart as illustrative of the problem.

---

[4] Also included in plaintiff's claim charts corresponding to the sensor limitations is information regarding smart watches generally, the Cell-All initiative's aims, and an *Inter Partes Review* decision concerning a patent not at issue.

[5] The document goes on to discuss defendant's preliminary invalidity contentions submitted in response to plaintiff's earlier-struck infringement contentions.

A.   '497, '752, and '439 Patents' Sensor Limitation

Plaintiff's chart for Apple, for the '497 patent, begins with independent claim 1, which claims "a multi sensor detection and lock disabling system for monitoring products . . . comprising: . . . . a plurality of interchangeable detectors for detecting the chemical, biological and radiological agents and compounds and capable of being disposed within the detector case . . . ." Apple Claim Chart at 9 (quoting the '497 patent, claim 1).   In the column for the accused devices, plaintiff writes that the government and Apple infringe this detecting component under the doctrine of equivalents through the "NODE+" platform "developed with NASA for the DHS Cell-All project." *Id.*   The chart states that NODE+ is a small cylindrical device that "transmit[s] data from sensors to smartphones or other smart device." *Id.*   This then is used with "off-the-shelf sensors" to create an "interchangeable module" that could be "snapped onto either end of smartphone or other device." *Id.*   It is apparent that the NODE+ and the "off-the-shelf sensor" are both separate from and extraneous to the accused devices.   The same language is used by plaintiff for the sensor or detector limitation in his '752 and '439 patents.   *Id.*   at 16 (Claim 10 of the '752 patent); 97 (Claim 13 of the '439 patent); 106 (Claim 14 of the '439 patent);173 (Claim 22 of the '439 patent); 187 (Claim 23 of the '439 patent). This language is further repeated for other products in the Apple charts.

General Systems Inc. and the NODE+ device are new to the suit. Thus, as defendant points out, they are an improper expansion of the case beyond the ambit of the final amended complaint.   They could therefore be ignored for this reason alone.   More fundamentally, however, they illustrate the painfully obvious problem with plaintiff's case: he has not, and at this point in the litigation we must presume cannot, credibly allege what component of the accused Apple, or Samsung for that matter, devices infringe literally, or is even equivalent to, hazard detectors or sensors claimed in his patents.[6]   NODE+ and the additional sensor needed to make it work are not components of the phones and smart watches accused by plaintiff. This is clarified further in plaintiff's reply brief where he explains that he has tried to demonstrate to defendant that "when the sensing and detection means is placed in, on, upon, or adjacent the cell phone, the integration forms a 'sensor'." Pl.'s Reply at 5.   He goes on to include pictures of examples, which show the additional sensors added or affixed to the phones.   They are

---

[6] The same language is used in plaintiff's contentions regarding Samsung, and for that matter, LG. *See, e.g.*, Samsung Claim Chart at 9, 16 *et seq.*

not native to the devices as manufactured by Apple or Samsung.  Unable to find a sensing component in the accused devices, Mr. Golden did as he has done for many years now, simply brought in another party and device. Unexplained is how they relate either to the products ostensibly accused by the complaint or the overarching mystery present in all of plaintiff's pleadings—how the government is on the hook for the private parties' products.  The citation to the NODE+ sensors of General Systems Inc. does not meet plaintiff's burden to "identify[] where each element of each asserted claim is found within each accused product."  RCFC Patent Rule 4(c).

    B.  The '287 Patent's Sensor Limitations

        Like the three patents discussed above, the '287 patent contains three claims which teach that the CMDC device includes one or more sensors or detectors for hazardous materials.  Claim 4 of the '287 states that the device is comprised of, among other things, "at least one or more detectors . . . of a chemical, biological, radiological, or explosive agents."  Apple Claim Chart at 198 (quoting '287 patent, claim 4).  Claims 5 and 6 likewise teach at least one hazard detector.  *Id.* at 208, 218.  The same is repeated for other Apple devices and the Samsung devices.  The claim chart for this element of the invention identifies, ostensibly under the doctrine of equivalents, the CPUs of these Apple devices (phones and smart watches) as the sensors.  Plaintiff explains that the CPU is connected to the "field devices" such as sensors to "provide[] the interface between the CPU and the information providers (inputs)" and then performs whatever function the phone has been programmed to perform in response to those inputs.  *Id.* at 198, 208, 218.  It is apparent from these charts and from plaintiff's response to the motion to strike that he asserts that the CPUs themselves satisfy the sensor limitation of his patents.  We disagree.

        Plaintiff's own chosen language belies his point.  He states that the CPU receives inputs from the "field devices," which include any sensors, and then executes the commands stored in memory to respond to these inputs. His patents, however, claim a specific type of field device, *i.e.* hazardous material sensors, as an independent component of his invention.  Thus, under Patent Rule 4, he must identify where in the Apple and Samsung devices such a sensor is present.  Instead, plaintiff asserts that the phone's brain, its CPU, ought to count as the sensor.  This, despite his own explanation in the claim charts that the CPU communicates with separate input devices (including sensors).  Even under the doctrine of equivalents, the CPU cannot be both the thing that responds to the inputs—the brain—and the extremities

that deliver the inputs—in plaintiff's analogy, sensory nerves. Plaintiff's preliminary infringement contentions fail to identify a sensor or detector in the accused products as claimed by his patents.

C. The '189 Patent

Like his other patents, plaintiff's '189 patent contains two claim limitations that include sensors for hazardous materials. These are found in independent claims 7 and 8. Apple Claim Chart at 68, 77. Plaintiff's claim charts make no attempt whatsoever to link these limitations to any component of the accused devices. The charts instead quote from an *Inter Partes Review* at the Patent Office of a different patent and from the '189 specifications regarding sensors. This does not pass muster under the rules as it wholly fails to link these limitations to the accused devices. For this reason, the corrected contentions must be struck.

III. Locking Function

Defendant also argues that the claim charts fail to identify in the accused devices any locking mechanism or function as claimed by the five patents. This same problem betrayed plaintiff's first attempt at infringement contentions, and it does so again. Ignoring what was alleged in his claim charts, plaintiff responds that he has identified the CPUs of the accused products and their "fingerprint biometric lock disablers" which are together, in his opinion, the equivalent of the lock disabling systems claimed by his patents. Pl.'s Resp. and Cross-Mot. at 20. As discussed below, however, his claim charts do not identify any biometric fingerprint sensors or functions in the accused devices as the claimed locking features. He goes on to state that the locking mechanisms are described in his patents' specifications and thus there is no need for further specificity in the claims. It is unclear how that last point is responsive to defendant's argument, which has nothing to do with the lack of specificity in the patent itself, but rather asserts that Mr. Golden's claim charts are deficient because they do not identify the locking mechanisms in the accused devices.

A. The '189 and '439 Patents

Claim 2 of the '189 patent and claim 14 of the '439 patent teach that the invention is comprised of, among other things, "monitoring equipment [that] is interconnected to a product equipped to received signals from or send signals to the lock disabling mechanism that is able to engage and

disengage or disable the lock disabling mechanism . . . ."  Apple Claim Chart at 34, 110, 252, 328, 471, 547 (quoting the '189 and '439 patents).  The corresponding box in the accused devices column states that the Apple products are "capable of sending signals to lock and unlock doors" and security systems in buildings and vehicles.  *Id.*  The same is true for the Samsung devices, and for that matter, the LG devices in plaintiff's charts.

This is again short of what is required by the rules.  As we stated before, claiming that a product merely is capable of operating in a manner that infringes is insufficient notice in an infringement contention.  *Golden*, 2021 WL 3238860 at *6 (citing *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)).  That a device could do something is not sufficient to identify what component performs the necessary function.[7]  Beyond that, what is cited by plaintiff as exemplary of the infringement appears to be an altogether separate feature of smart devices, in essence, that they can be used to remotely lock and unlock other devices present in one's home or vehicle.  The limitations claimed in the patents for a locking function claim a capability to lock the device itself or some of its subsystems, such as the sensors, not a device external to the CMDC.  Plaintiff's corrected contentions fail to identify where in the accused devices a locking mechanism is present.

B. '497 and '752 Patents

The '497 and '752 patents claim a mechanism for locking the CMDC in response to the detection of hazardous materials, found in claim 1 and claim 10 of those patents respectively.  As we stated before, plaintiff's contentions must identify where or how in the accused devices this limitation is found.  Plaintiff has again failed to do so.

For claim 1 of the '497 patent, plaintiff's contention chart accuses the

---

[7] To be fair, the patents also separately claim a locking and unlocking mechanism which responds to unauthorized attempts to access the device by locking it.  For these limitations, the claim charts recite the patents' specifications and apparently quote an explanation from Apple regarding its Apple ID locking functions and, for Samsung, verbiage from a Samsung website regarding a similar security feature.  *See, e.g.*, Apple Claim Chart at 33; Samsung Claim Chart at 10.  Like the other locking feature in the claims, plaintiff has failed to point to anything specific in the accused devices which might literally or equivalently infringe on his design.

Apple products of having internal carbon monoxide sensors which then trigger light or sound alarms to alert the phone or watch user. Emergency services are automatically called if the alarm is not responded to. For Samsung products (and the LG products) a similar carbon monoxide warning feature is highlighted, but this time the sensor is in an external detector which communicates with the Samsung device via a downloaded application to provide a warning to the user. Both examples are a clear misfire as they do not purport to be a locking feature in response to a detected hazard, and, in the case of the Samsung (and LG) devices, both require communication with another, un-accused device. These are clear failures to identify where in the accused devices the locking feature in response to a detected hazard is present.

C. '287 Patent

Claims 4, 5, and 6 of the '287 patent each teach "at least one" locking mechanism that communicates with "at least one" CPU for locking or disabling the device. *E.g.*, Apple Claim Chart at 197, 206, 216 (quoting claims 4, 5, and 6 of the '287 patent). For this mechanism, the claim charts recite the same language regarding the capability of a CPU which plaintiff used for the detectors discussed above. *Id.* The same is true for the Samsung products. *E.g.*, Samsung Claim Chart at 197, 206, 216. An inspection of the LG chart reveals the same.

At best, this contention can be read to argue that the CPUs make the accused smart devices capable of locking. That is insufficient because the capability of a device to be programmed to perform similarly does not identify where or what in the device meets the patent's limitation. Plaintiff's patent clearly claims an independent component part of the CMDC that is a locking mechanism. Such a component is wholly missing from the claim chart. Plaintiff has had two attempts at identifying this feature in the accused devices. Having failed to do so, we assume that he cannot.

III. Other Deficiencies

The remaining limitations of the claim chart are almost entirely deficient as well. Although the two failures identified above are sufficient grounds to strike the new contentions, we agree with defendant that even a cursory examination of the claim charts for the other limitations reveals that they almost universally fail to meet the requirements of Patent Rule 4. Aside from the general claim of the patents that the CMDC includes a CPU, which

is unquestionably present in the devices accused, the rest of the limitations regarding sensors, viewing screens, warning lights, GPS connections, power sources, and communications components (Bluetooth, WiFi, and radio) are absent in the claim chart for each of the accused products. Instead, plaintiff's corrected claim charts merely provide a short explanation of the function of a CPU or a citation to the patent's specifications or to a decision of the Patent Office regarding another related patent.[8]

In a couple of other instances, plaintiff's charts refer to two prototype cell phones produced in 2011 for DHS, but neither of these phones is an accused product, nor were they made by Apple, Samsung, or LG. They cannot serve as the basis for a valid infringement contention for the accused products. In sum, plaintiff's corrected preliminary infringement contentions are irreparably deficient and must be struck.

## CONCLUSION

Mr. Golden has had two opportunities to conform his preliminary infringement contentions to the court's rules. These procedural requirements are not merely perfunctory. Patent Rule 4's specificity requirements serve an important function—to narrow and focus the issues and theories that must be pursued during the litigation. It is therefore not a triumph of form over function to dismiss the case for plaintiff's repeated failure to follow the rules in this regard.

Plaintiff has had eight years to come up with a plausible theory of infringement against the United States and the third parties whose products he alleges were made at the behest of the government. Mr. Golden has amended his complaint six times in response to the government's objections to the shortcomings in his pleadings. As we warned earlier, failure to produce a sufficiently detailed claim chart would cause the court to assume that it cannot be done. That has happened. Enough time and resources have been expended by the court and the Department of Justice dealing with these allegations. Because plaintiff has failed to conform his preliminary infringement contentions with Patent Rule 4 and has failed to follow a court order in that regard, the case must be dismissed. Accordingly, the following is ordered:

---

[8] Also included in his claim charts is generalized background regarding the Cell-All initiative, other unaccused devices, and general information about CPUs and smart devices.

1. The clerk's office is directed to return to plaintiff unfiled the materials received on September 21, 2021 (LG contentions) and the documents received on November 4 and November 8, 2021.

2. Defendant's motion to strike and to dismiss (ECF No. 240) is granted pursuant to Rule 41(b).

3. Plaintiff's cross-motion for summary judgment (ECF No. 241) is denied.

4. The Clerk of Court is directed to dismiss the complaint with prejudice and to enter judgment accordingly.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

13

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



PS10001000006

EP13F May 2020



---

## UNITED STATES POSTAL SERVICE®   PRIORITY MAIL EXPRESS®

### CUSTOMER USE ONLY

**FROM:** (PLEASE PRINT)   PHONE ( ) 864 288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS** (Customer Use Only)

☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)   PHONE ( )

UNITED STATES COURT OF APPEALS FOR
THE FEDERAL CIRCUIT
CASE NO: 22-1196
717 MADISON PLACE, NW
WASHINGTON, DC
ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9 -



◀ PEEL FROM THIS CORNER

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

---

### PAYMENT BY ACCOUNT (if applicable)
USPS® Corporate Acct. No.   Federal Agency Acct. No. or Postal Service™ Acct. No.

EI 036 964 491 US

### ORIGIN (POSTAL SERVICE USE ONLY)

| PO ZIP Code | Day of Delivery | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|---|
| 29606 | ☒ 1-Day ☐ 2-Day ☐ Military ☐ DPO | 2/23/22 | $ 26.95 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 2/22/22 | ☐ 10:30 AM ☒ 6:00 PM | $ | $ |

| Time Accepted | Special Handling/Fragile | Sunday/Holiday Premium Fee | Return Receipt Fee |
|---|---|---|---|
| 1160S ☐ AM ☒ PM | $ | $ | $ |

| Weight | Flat Rate | Acceptance Employee Initials | Live Animal Transportation Fee |
|---|---|---|---|
| __ lbs. __ ozs. | ☒ Flat Rate | 36 | $ |

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature | Total Postage & Fees |
|---|---|---|---|
| | ☐ AM ☐ PM | | $ 26.95 |

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature | |
|---|---|---|---|
| | ☐ AM ☐ PM | | |







1007   20439   R2304N11,





UNITED STATES POSTAL SERVICE